DAVID R. FISCHER, ESQ.
Nevada Bar No. 10348
LAW OFFICE OF DAVID R. FISCHER
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
Telephone: (702) 547-3944
Facsimile: (702) 974-1458
federal@fischerlawlv.com
*Attorney for Defendant LONNY J. DITIRRO, JR.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>LONNY J. DITIRRO, JR.,<br>Defendant. | Case No. 2:16-cr-00216-KJD-VCF<br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**COMES NOW** the Defendant, LONNY J. DITIRRO, JR., by and through his attorney, David R. Fischer, Esq., and respectfully files the following Sentencing Memorandum.

DATED this 24th day of April, 2019

LAW OFFICE OF DAVID R. FISCHER

/s/ David R Fischer
DAVID R. FISCHER, ESQ.
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
*Attorney for Defendant*

**DEFENDANT'S SENTENCING MEMORANDUM**

Lonny J. Ditirro, Jr., through counsel, submits this Sentencing Memorandum in support of a sentence of twenty-seven (27) years in prison and ten (10) years of supervised release with conditions. This sentence reflects the nature and circumstances of Mr. Ditirro's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

## I. INTRODUCTION

### A. Background

The facts, as alleged, recited herein without admission, are: In September 2015, Las Vegas Metropolitan Police was contacted by Mr. Ditirro's ex-girlfriend, Rachel Saito. Ms. Saito stated that she found a Micro SD card in her bed that belonged to Mr. Ditirro. When she viewed the contents of the SD card, she saw images that she believed to be child pornography.

In December of 2015, the Las Vegas Metropolitan Police Department's Internet Crimes Against Children Task Force obtained a search warrant in order to perform a forensic examination of the SD card. In March 2016, 254 images and 42 videos of child pornography were found on the card. In addition, Mr. Ditirro's birth certificate and resume were also found on the card, which, the Task Force concluded, was proof that the SD card belonged to him.

Mr. Ditirro was charged and convicted of four counts of Sexual Exploitation of Children, in violation of Title 18 of the United States Code, Section 2251(a), and one count of Possession of Child Pornography, in violation of Title 18 of the United States Code, Section 2252(a)(5).

Mr. Ditirro is his mother's only child. His parents divorced when he was young, and his father has two children from another relationship. Mr. Ditirro's family has been very supportive during the legal proceedings. They frequently talk to him over the phone, send him money, and provide emotional support.

Mr. Ditirro graduated from high school in 2000, and has worked in the restaurant and casino industries, mostly as a cage cashier. Upon his release he aspires to be an entrepreneur in the restaurant and real estate fields. He would specifically like to open franchise businesses.

Mr. Ditirro has no prior criminal history. He has no drug or alcohol abuse issues, and considers himself a "social drinker". He also abstains from marijuana and illegal drugs.

**B. Legal Framework**

While this court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v United States*, 552 U.S. 85, 90 (2007). The court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *Id.* at 49-50, and explain how the facts relate to the purposes of sentencing. *Id*. at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). As the Supreme Court held in *Kimbrough*, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse

of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 91, 109-10; *see also Spears v. United States*, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In *Vazquez v. United States*, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, *Vazquez v. United States*, No. 09-5370 (Nov. 2009). Congressional directives "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." *Id*. at 328.

This court may thus properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, *see Kimbrough*, 552 U.S. at 109-10, consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer

review" and is "not suspect." *See Kimbrough*, 552 U.S. at 109-10; *Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.[1]

**C. Requested Sentence**

Mr. Ditirro asks this court to impose a sentence of twenty-seven years in prison, and ten years of supervised release with the conditions that he register as a sex offender with the State of Nevada and undergo any further treatment deemed necessary by the Probation Officer, including no pornography treatment, sex offender treatment, polygraph testing, computer monitoring software, and undergo periodic computer searches. Unlike the PSR's advisory guideline range of 1,680 months in prison, the requested sentence is "sufficient, but not greater than necessary" to serve sentencing purposes under § 3553(a).

Part II.A of the following Argument shows the Mr. Ditirro's total offense level was miscalculated and overstated in the Presentence Investigation Report (PSR). The PSR's drafter

---

[1] *See also United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010) (applying abuse of discretion review to a district court's policy-based downward variance from § 2G2.2 because "the Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"); *id*. at 608-09 ("Congress, of course. . . may enact directives to the Commission which the Commission is obliged to implement," but "*Kimbrough* permits district courts to vary even where a guideline provision is a direct reflection of a congressional directive"); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (*Kimbrough*'s holding that "it was not an abuse of discretion" for a district court to disagree with the crack guidelines "because those particular Guidelines 'do not exemplify the Commission's exercise of its characteristic institutional role' . . . applies with full force to § 2G2.2."); *United States v. Henderson*, 649 F.3d 955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*."); *id*. 963 n.3 ("That Congress has the authority to issue sentencing directives to the Commission" and "that the Guidelines conform to Congressional directives does not insulate them from a *Kimbrough* challenge."); *United States v. Stone*, 575 F.3d 83, 89-90 (1st Cir. 2009) ("[O]ur precedent has interpreted *Kimbrough* as supplying this power even where a guideline provision is a direct reflection of a congressional directive," including the career offender, fast-track, and child pornography guidelines); *id*. at 93-94, 97 (district court may choose to agree with Congress's policy decisions as long as it recognizes its authority not to, but the "guidelines at issue are in our judgment harsher than necessary" and "we would have used our *Kimbrough* power to impose a somewhat lower sentence"); *United States v. Halliday*, 672 F.3d 462, 474 (7th Cir. 2012) (district courts are "at liberty to reject *any* Guideline on policy grounds," but defendant did "not argue that the district court was unaware of its discretion to disagree with the [child pornography] Guidelines"); *United States v. Regan*, 627 F.3d 1348, 1353-54 (10th Cir. 2010) (defendant's argument for a policy-based variance from § 2G2.2 was "quite forceful" but he "did not raise the argument that the Guidelines are entitled to less deference because they are not the result of empirical study by the Commission").

added an enhancement to the offense level for elements of the crime that are based on insufficient evidence.

Part III.B explains with factual and empirical evidence that the circumstances of the offense are highly relevant to the statutory purposes of sentencing and the overarching duty to impose a sentence that is sufficient, but not greater than necessary, to satisfy those purposes.

## II. ARGUMENT

### A. The Offense Level Computation in the Presentence Investigation Report (PSR) Overstates the Total Offense Level.

The PSR assigns Mr. Ditirro a total offense level of 43.  The drafter arrived at this offense level by adding enhancements, including the following:

- Base Offense Level 32.  PSR at ¶ 43.

  **Count 3/Group 3: Sexual Exploitation of Children**

- ***2 levels: Specific Offense Characteristics - § 2G2.2(b) (1) (B) if the material involved a prepubescent minor or a minor who had attained the age of 12 years but not attained the age of 16 years, increase by 2 levels.  PSR at ¶ 60.***

- 4 levels: Specific Offense Characteristics - § 2G2.2(b)(1)(B) if the offense involved (B) (i) the commission of a sexual act; and (ii) conduct described in 18 U.S.C. §2241(a) or (b), increase by 4 levels. PSR at ¶ 61.

  4 levels: Specific Offense Characteristics - § 2G2.2(b)(4) if the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence, or (B) an infant or toddler, increase by 4 levels.  PSR at ¶ 62.

Paragraph 26 of the PSR inaccurately depicts the victim S.M. as fifteen during the creation of nude Skype snapshots in her bedroom. As stated in the same paragraph, S.M. says that "based upon her bedroom décor in the photograph, she was 15-years old at the time". Such a statement

shows the victim's uncertainty as to when the incident occurred. Unless the victim's age at the time can be positively proven, this two-point enhancement should not be allowed.

Based on the errors in the PSR outlined above, Mr. Ditirros's total offense level should be reduced by 2 levels which would bring his total offense level down to 41. With a revised total offense level of 41 and a criminal history category of I, the PSR should reflect a guideline imprisonment range of 324-405 months, instead of the life imprisonment suggested by an offense level of 43.

If the court allows the PSR to stand without requiring the government to prove this essential element of Mr. Ditirro's crime, he stands to spend a lifetime in prison solely based on mere speculations presented by law enforcement officials. This would be a glaring violation of Mr. Ditirro's constitutional rights.

**B. Given the Nature and Circumstances of Mr. Ditirro's Offense, the Sentence Requested Is Sufficient, But Not Greater Than Necessary, to Satisfy the Purposes of Sentencing.**

Mr. Ditirro was found guilty by a jury of his peers, and must be held accountable for his actions. He must register as a sex offender, with the publication of that information to the community and his friends and neighbors. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling its prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (in a case involving a conviction for possession of child pornography after *Gall*, affirming the district court's finding that the defendant "warranted a lower sentence

because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution, because the court's findings "were directly relevant to the § 3553(a) analysis, which requires sentences to reflect, among other things, "the history and characteristics of the defendant," the need to "protect the public from further crimes of the defendant," the need to "provide just punishment for the offense," and the need to "afford adequate deterrence").

The Ninth Circuit recognizes the district court's authority to use discretion in child pornography cases to ensure just punishments are imposed just as it required in *United States v. Henderson*, 649 F.3d 955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*.").  And the Ninth Circuit is not alone in its view that *Kimbrough* authorizes sentencing judges to disagree with sentencing Guidelines when they appear to be overly harsh as seen in child pornography cases.  See *United States v Prisel*, 316 F. App'x 377, 378 (6th Cir. 2008) (affirming non-Guidelines sentence of one day in prison followed by 18 months home confinement for possession of child pornography); *United States v. Rowan*, 530 F.3d 379, 380 (5th Cir. 2008) (affirming non-Guidelines sentence of five years probation and no incarceration for possession of child pornography); *United States v. Morace*, 594 F.3d 340, 351 n. 10 (4th Cir. 2010) (noting "that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of

supervised release"); *United States v. Mallatt*, No. 13-CR-3005, 2013 WL 6196946, at 13 (D. Neb. Nov. 27, 2013) ("sentence of time served, followed by six years of supervision with special conditions including intensive treatment is adequate to fulfill the goals of sentencing in this case"); *United States v. Meillier*, 650 F. Supp. 2d 887 (D. Minn. 2009) (imposing non-Guidelines sentence of one day of confinement followed by 30 years supervised release); United States v. Boyden, No. 06-CR-20243, 2007 WL 1725402 at *10 (E.D. Mich. June 14, 2007) (imposing non-Guidelines sentence of one day confinement followed by three years supervised release, the first year of which to be served in RRC).

The court can use its discretion to ensure that Mr. Ditirro's sentencing is fair and just, and it has the authority to do so especially in a case like this. As it stands now, the PSR recommends Mr. Ditirro serve 140 years in prison on a first-time crime. A sentence so severe would guarantee that he lives out the rest of his life in prison. That is the very definition of overly harsh punishment and serves as another basis for Mr. Ditirro's requested sentence of twenty-seven years in prison.

///
///
///
///
///
///
///
///
///
///
///

**III. CONCLUSION**

For the reasons stated, Mr. Ditirro respectfully requests that this court grant his request and impose the requested sentence of twenty-seven years in prison and ten years of supervised release with the conditions that he register as a sex offender with the State of Nevada and undergo any further treatment deemed necessary by the Probation Officer, including no pornography treatment, sex offender treatment, polygraph testing, computer monitoring software, and undergo periodic computer searches.

DATED this 24th day of April, 2019

LAW OFFICE OF DAVID R. FISCHER

__/s/ David R Fischer______________

DAVID R. FISCHER, ESQ.
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
*Attorney for Defendant DITIRRO*

**CERTIFICATE OF ELECTRONIC SERVICE**

I HEREBY CERTIFY that I am an employee or agent of the LAW OFFICE OF DAVID R. FISCHER and am a person of such age and discretion as to be competent to serve papers.

That on the 24th day of April, 2019, I served an electronic copy of the above and foregoing **DEFENDANT'S SENTENCING MEMORANDUM** by electronic service (ECF) to the persons named below:

Elham Roohani, Esq.
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, NV 89101
(702) 388-6336
elham.roohani@usdoj.gov

Christopher Floyd Burton
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, NV 89101
(702) 388-6336
christopher.burton4@usdoj.gov

Cristina D. Silva, Esq.
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, NV 89101
(702) 388-6586
cristina.silva@usdoj.gov

__/s/ David R Fischer_______________________
DAVID R. FISCHER, ESQ.
*Attorney for Defendant* DITIRRO